Case number 21-1087, Tyler Brennan and Raysdaquois, LLC, Petitioners v. Stephen Dickson, Administrator and Federal Aviation Administration. Mr. Ruprecht for the Petitioners, Mr. Ross for the Respondents. All right, Mr. Ruprecht, you can proceed when you're ready. Thank you. May it please the Court. I'd like to reserve three minutes for rebuttal, please. My name is Jonathan Ruprecht. I am the attorney for the petitioners. I am also a commercial pilot and flight instructor. Today we asked this court to vacate the FAA's rulemaking and send it back to them. Two reasons why. One, the regulations are a violation of the Fourth Amendment, and two, the rulemaking, it was arbitrary and capricious because the FAA failed to respond to many significant comments. As to the first point, the Fourth Amendment violations, people have a reasonable expectation of privacy in their backyards, and remote identification allows for law enforcement to track individuals in their backyard. In the United States Supreme Court case of Caro, the United States Supreme Court held that law enforcement monitoring a beeper inside of a person's home required a warrant. With remote identification, here, law enforcement, without any warrant, and it's completely unlimited, are allowed to track an individual in his backyard. Wait a minute, Mr. Ruprecht, you're getting a little bit ahead of the rule. The rule does not create any authority for law enforcement to access any information. The rulemaking was specifically done in such a way so that it allows for anybody with a wireless electronic device, such as a phone or a laptop, to be able to actually receive the information that's broadcast. So it's public as well as law enforcement. So the states, the federal law enforcement agencies, as well as the local law enforcement agencies could all receive this information. You say could, but isn't there a need for some further authorization, enabling? I mean, they're setting, they're requiring the drones to have this broadcast capability, but they're not opening access to the results of it under this rule, are they? The regulate, well, how it's written is that an individual flying in the airspace United States is, especially in a person's backyard, is going to have to have only two options. You only have to have to do a standard remote identification aircraft or you're going to have to retrofit it with a broadcast module ID and that information is going to go out and then law enforcement can receive it. There is no middleman, there is no FAA that needs to be in the middle or court, it's just completely warrantless and unlimited in the ability. The rule says that there has to be a system of records notice promulgated before the data is, it appears that the system of records notice would even apply to the FAA's use of the data, but it would certainly apply to use by any other government agency. And that system of records notice hasn't been promulgated yet, right? Correct. That systems of record notice is discussed in the FAA's brief, specifically at the very bottom page of footnote four. And at the very last sentence, there's a really interesting point that the FAA is actually presently in the process of updating that systems of record notice to allow for the FAA to disseminate the information that they have in their databases to law enforcement. But that is a completely distinct situation from remote identification messages that are broadcast out publicly. So it kind of looks like a pseudo response, but in reality... You're making an argument about what's broadcast publicly, that is broadcast without identifying information, correct? Correct. For purposes of the actual message element, it's a unique serial number ID that's going to go out. And so that information, everybody can get it. The systems of record notice on footnote four when they talk about it, that is specifically what's going to happen is going to be correlation. So my point is for Fourth Amendment purposes, your argument would then be that receiving real time data that does not identify the operator of a drone is still nonetheless a search within Fourth Amendment purposes, right? That's your argument? Yes, Your Honor, because specifically, even if the law enforcement was not able to actually real time right then and there actually log that information into the databases and actually see the airmen records, specifically what we've indicated in the addendum, you can see that there's medical records that are actually indicated there, we can see people's eye color and their weight and their hair. So setting aside they didn't have access to that, it allows for the logging and aggregation of this data, and then all you have to do is just pair it up. Public property records, now I know exactly who lives there based upon public records, and I've seen that unique serial number, it's not randomized or anonymized, it's a unique serial number that traces around across the United States, you log it, and then you can go back and actually search the archives. There's lots of ways where public property records, etc. that are public and searchable and whatnot can be used to aggregate, but what's your best authority for the proposition that once law enforcement performs such aggregation of public information, it becomes a search. I'm sorry, can you say that again, what's my best authority in regards to when law enforcement aggregates data? Law enforcement could follow a car, and then see that it stops in front of a particular house, and the person goes into that house, and then they can look at property records to determine who owns that house, but that doesn't make all of those observations a search, does it? I think you're primarily getting into an interesting point there in regards to the observation of one individual at one particular location and what law enforcement could observe at that one instance, right, so this is much more voluminous and persistent, it's primarily going back to what was primarily discussed in the Manard case at the DC Circuit, where it's the whole of the movements, that an individual has a reasonable expectation of privacy in the whole of their movements, but that's also a distinct issue from a person having a license plate. Mr. Ruprecht, I understand that you reject the analogy to a license plate, but just for purposes of probing your initial set of points, a license plate is visible to the public, and when paired with other information, you could find out a lot about a person, who it is, if the car is parked in the driveway, who the person is who owns the car, therefore are they visiting that person or are they the homeowner, but the key there is that the public doesn't have unfettered access through that number to the further private information, and my understanding is that this rulemaking similarly doesn't open the door generally either to the public or to law enforcement for the information associated with the remote ID. Am I wrong about that? So there are two aspects here, there is the broadcast elements that are required by regulation, that's a unique serial number, and then it gives the Latin along. The other issue that Judge Wilkins was bringing up in regards to the FAA databases, which the FAA is also updating the system's record notice for, that is the databases that the FAA has for, for example, if you obtain a remote pilot certificate or a medical certificate, it puts your birthday, your age, your weight, your hair color, all of that information, and so those are kind of two separate distinct points. But I take it your objection is to the public or law enforcement's ability to put those two pieces of information together, to use the public facing unique identifier to access personal information in a database. That's your concern, your privacy concern, it's not just that there's a unique identifier being broadcast. Well, actually the unique identifier, that's actually the most dangerous portion, and that's what's publicly available. And so, as long as you can have that and aggregate that over time, all you have to do is figure out matching those up, and you've identified this individual over a really long period of time. And I see my time's about to potentially get up here. Do you guys have any questions? No, thank you.  We'll hear now from Mr. Ross. Thank you, Your Honors. Thank you, Your Honors. You can raise the deus if you want, there's a button on your right, bring it up, and that'll actually help the amplification and the recording. Is that better? Yes? Okay. Thank you, Your Honor. Case in Ross for the United States. Following Congress's prescription to establish rules allowing for the remote identification of unmanned aircraft systems, the agency issued the rule challenged here to allow for airspace awareness, to distinguish compliant airspace users from those that may pose a security or safety threat. How are you defining airspace in the plaintiff's brief? They're objecting to authority to regulate down to the ground, to regulate within people's private property. They say this is as if the Coast Guard is regulating the rowing of a boat on someone's private pond. What's the scope of the FAA's authority to regulate so-called national airspace? Sure, Your Honor. For one, I actually don't understand petitioners. The petition itself is challenging FAA's statutory authority. I believe they concede, as a matter of fact, FAA's direction under Section 2202 of the FAA Extension Safety and Security Act of 2016 to actually issue these rules or rules of this sort. But in any event, FAA exercised that authority under 49 U.S.C. 44701A5, which provides the agency authority to regulate air commerce or the means necessary to ensure safety in air commerce and national security, as well as 49 U.S.C. 40102A3, which provides the agency additional authority to regulate aircraft operations, which could directly affect or may endanger safety in air commerce. So is it the FAA's position that it can regulate down to the ground and over private property? This case doesn't raise that question, Your Honor. And petitioners' arguments to the contrary in their reply brief are not worth addressing in this case. But instead, the regulation at issue here was simply pursuant to the regulation of air commerce. And courts that have addressed this question, which we didn't raise in our brief because we didn't understand. When would be the case to address that? Sure. So I can point the court to Hill v. NTSB. No, no, no. You said this is not the case to address Judge Pillard's concerns. Sure. And the petitioner's concerns about regulating drone use below the tree line on private property. Could someone bring an as-applied – let's say we rule for you in every respect. Correct. Down the road, could someone bring an as-applied challenge on Fourth Amendment's grounds to the FAA's tracking someone's use of a drone on their own property, particularly when the drone is on the property below the tree? Certainly, Your Honor. And there's nothing in the rule that would foreclose that challenge in some sort of defensive posture. Courts adjudicate motions to suppress all the time on Fourth Amendment grounds. No, we're not talking about a motion to suppress. And let's suppose that there's just no enforcement action at all, so it's not even a defense to an enforcement action. It's just that somebody a year from now buys a drone, and they want to just use it on their 100 acres in the country. And that's the only place that they want to use it, and they don't want to have to transmit their remote ID data to the government. How can they bring that challenge? I think at that juncture, Judge Wilkins, absent any other government action, they wouldn't have the ability to do so. Congress has channeled FAA's challenges to FAA rules to be within the 60 days the rule is promulgated. So unless the agency takes some sort of enforcement action against that ranch owner, I don't believe they would have any ability to challenge it a year from now. Then what is the government interest in obtaining remote ID data from a drone that's operating entirely on one's property? Because, Your Honor, it's easily foreseeable for the drone to be operated outside of that person's property. For a drone to traverse a fence line to an adjacent property owner's space is very foreseeable. An anecdotal example might be illustrative and helpful in this circumstance. In 2015, I'm told that a very sophisticated drone operator was piloting his drone in Gallery Place, just a few blocks from here, and a quick gust of wind caught the drone and took it to the White House lawn, completely out of his control, and he was unable to keep the drone from essentially creating a national security risk. Additionally, the rule itself is forward-looking. So for your argument, just to cut to the chase, is that even if there is no government interest, where the government interest in obtaining data for a drone operating entirely on one's property is that the person may not continue to use the drone solely on their property. And so for that reason, you can't just kind of turn on or off the location, I guess, technology. It has to be on at all times unless you're in one of these FAA-authorized identification areas. That's correct, Your Honor. There's nothing for FAA to preclude a drone user from using his device absent his property, similar to a vehicle license plate, for example. There's nothing local law enforcement can do to foreclose someone from using their vehicle, which is perhaps not covered by a license plate, outside of their property. But regulations exist requiring license plates to provide for safe identification of those vehicles on the roads. Let's say I don't think that's a good enough reason. Do you have a second? Let's say I don't think that the concern that someone on, as Judge Wilkins said, a 100-acre farm, or we could imagine it, 10,000, ranch, might, in the middle of that ranch, somehow accidentally fly the drone 5,000 acres the wrong way over a property line. Imagine I think that that concern is not a good enough reason to regulate what someone does on his own property. Do you have another reason? Sure. What I was getting to previously, Your Honor, is that the rule itself is forward-looking in the sense that FAA and Congress foresee rapid proliferation of drone use. I think we've all seen models of Amazon drones, for example, delivering packages to our doorsteps, or drones of other sorts being a greater portion of public life. And in this way, when drones enter a person's property, the FAA is aware of where the drone is, if it poses a safety or security risk. Very similar to traffic management for planes in the sky, for example. FAA is able to identify and avoid collision between planes. Similarly for drones. Even if one particular ranch operator, say, in the middle of Oklahoma, is using his own drone, that's not to say there might be another drone that would foreseeably fly with that drone. But it would be impossible to know that there was other... What if I'm talking about on your property, below your tree? Even so, say there was still another drone that was coming into that space for one reason or another. Would that other drone be trespassing? That would be a separate question to bring an action against the other drone user. It seems a little bit extreme to say you can regulate what someone does with their drone on their own private property because what they do on their property might interfere with what a trespasser does. That may be the case, Your Honor. But I will return to my prior point that there's no way for FAA to foreclose any drone user from exiting their property with the device. They could make the regulatory requirement that anybody who's not below the tree line on their own property needs to have this. And then if you're out and you don't have it, then you're not in compliance. I mean, there's lots of ways that this could have been written more narrowly. I recognize that isn't the rule we have, and this isn't actually the nature of the challenge even that we have before us. But we're just probing the interest of the FAA behind this particular rule. And it does seem difficult in some fact situations to correlate the interest that you've stated and that we see in the administrative record with some of the applications. So I will direct the court to pages 4415 to 16 and page 4437 of the text of the final rule itself, in which the FAA addressed possible proliferation of so-called FAA-recognized identification areas, which Judge Wilkins previously noted. And in that circumstance, specifically considered whether there should be effectively exempt areas, as you've questioned Judge Walker, in everyone's backyard. But allowing such an exemption would completely undermine the rule's effectiveness. Consider, for example, a series of backyards that are adjacent to one another. If all of those backyards are exempt from the rule, then there would be effectively blind spots for the FAA. And maybe it's unfair to expect the regulation to be tailored this narrowly. But I'm imagining, you know, there's a TV show, Yellowstone, and they own a ranch that's, you know, it's the size of Rhode Island. None of the concerns you're talking about would apply there. That might be true, but there's no way for FAA to tailor the regulatory approach here to be so specific in that way. I think you'd have to make an argument that they don't have to. And I'm open to that. I think I understand. And it's not to say that someone of the sort that you're identifying might still be able to request an exemption from the agency. And if that exemption were denied, you know, there could be subsequent administrative proceedings contesting that denial. Or some proceeding in which the FAA cites someone for failure to comply with the rule, and they challenge it on precisely that basis. This rule does not foreclose the possibility of someone being granted a sort of safe fly zone, no reporting space on their own property? I don't want to overstate the possible exemptions from the rule. My understanding is that it provides for exemptions in these FAA-recognized identification areas, primarily for community-based or educational institutions. But I'm not sure that – I thought the rule said that those things cannot be applied. Oh, no. Those exemptions are still available. For someone's private property. That's why I'm saying I don't want to overstate the exemptions. And there are not very many of those. The commenters were concerned there were not very many of these FAA-recognized identification areas. So, but is there – you said there might be some process for an individual getting an exemption if they had – if they're not aware of that. I don't want to overstep, but it's certainly feasible, I think, or foreseeable, that were the FAA to bring an enforcement action for someone's failure to comply with the rule, the response would be, I'm not going to broadcast my identification when I'm on my 100-acre ranch. And that's not foreseeably within the context of the rule. And FAA could consider that defense in the normal course. That's obviously far away from the nature of the challenge actually presented here, which it sounds all agree are squarely within the agency's statutory authority. I see I'm over my time, but I'm very happy to answer any of the questions. I have some more questions. Absolutely. With respect to the remote ID data and the operator data, can people within the FAA right now that the rule is effective access that data? So, in other words, be able to see the data transmitted by the drone and then access the FAA records to match that with an operator. Can that happen today? I believe so, Your Honor. And the government did not raise a ripeness argument with respect to the petitioner's challenge. But that can happen today even though a new system of records notice has not been promulgated, right? That's correct. The new system of records notice is for other law enforcement agencies to be able to have that capability. FAA can do that now. That is, pair the serial number or session identification number of a particular drone with the personal information attached to that device. That's the way I read the kind of oblique language at pages 11 and 12. And I think it's 36 of your brief because it didn't seem like you wanted to say that out loud explicitly. So, I'm glad that we now have that clear. So, now that we have that clear, isn't that a search within the meaning of the Supreme Court's decision in Cairo? No, Your Honor, because the Supreme Court made clear in Cairo that there is a salient distinction between attachment or installation of a device versus the actual monitoring of the device. But you just told me that the device can be monitored today by the FAA. But there's not evidence that the monitoring has actually taken place. Indeed, the Supreme Court's decision in Jones underscores that distinction. That is, the Supreme Court made clear in that case. Why, in analyzing the rule that gives the government the authority to do that, do we care whether we have evidence that it's taking place or not? I think that's because the actual monitoring is maybe what would constitute the search, Your Honor. But the rule authorizes the monitoring to take place. So, to construe the constitutionality of the rule, don't we have to assume that the authority that is granted the government by the rule is being exercised by the government? I think the court would assess the constitutionality of the enforcement of that rule in the normal course. In Kansas v. Glover, for example, the Supreme Court passed upon the evaluation of whether it was a search to bury a license plate database and concluded that it was not. But it did not press upon the threshold question, or excuse me, there was a separate threshold question of requiring license plates and establishing the license plate database in the first place. You're telling me that a rule that authorizes the FAA in real time to monitor drone use of citizens in their backyards and exclusively on their property, that we shouldn't consider whether that is a search within the meaning of the Fourth Amendment because we don't have any evidence that that is actually occurring now, even though it's authorized to happen by the rule? For one, yes, that's correct. Second, Your Honor, the First, Fourth, Sixth, Seventh, and Tenth Circuits have all held that pervasive and long-term video surveillance of a home does not constitute a search. Indeed, the Seventh Circuit in Tuggle explained that 18 months of surveillance in which three separate poll cameras were directed at a home did not constitute a search under the Fourth Amendment. This is a much less invasive form of data collection. And indeed, my understanding, based on my conversations with the agency, is it's not as if there are individuals... If the Supreme Court held in Cairo that it was a search once the government monitored the data from the beeper that was installed in the camp, then why isn't this a search? Well, in Cairo, of course, Your Honor, the actual case involves an enforcement action taken against Mr. Cairo. Enforcement doesn't make it a search or not. We don't care. Teachers can search a backpack at school. That's still a search within the Fourth Amendment, even if law enforcement isn't involved. A search is a search. So if you're sufficiently skeptical in this score, we urge the court to recognize that a special needs exception applies here, such that a warrant would not be required if you conclude that it is a search. Tell me why I shouldn't conclude that it's a search under Cairo. I'm sorry, Your Honor. I just... I was taking our disagreement on this score. I understand you have the fallback position of special needs, but tell me why I'm wrong about Cairo, if that's what I'm inclined to believe, that it's a search under Cairo. I guess I will reiterate the distinction in Cairo between the installation and subsequent monitoring. Well, the question is whether an individual has an expectation of privacy. I would assume, I mean, I would trust that the FAA is looking at the information it's getting, because that's the point of having the system in place. You know, if there's somebody reports that there are drones, you know, hovering outside their bedroom window, you would assume the FAA is going to look. Who's flying that drone? And so then the question is, does the person who's flying that drone have a reasonable expectation of privacy in either the location of the drone and or the location of the drone operator? And I took it in your brief that your position was no, that they did not have a reasonable expectation of privacy, notwithstanding, for example, Cairo, Carpenter, Jones. And I guess that's the question that I think that Judge Wilkins, although he can press his own point, is probing. Why no reasonable expectation of privacy here? Sure. So there's also the threshold point, Your Honor, that the 5th, 8th, 10th and 11th circuits have said that there is no reasonable expectation of privacy in the location of a plane. That is true whether you are a passenger or pilot of the plane. And they're talking about at least, you know, special aviation and commercial aircraft. That's something you can see from thousands of feet away, not a drone. Depending on the circumstances, Your Honor, you would be able to see a drone from potentially thousands of feet away, depending on the size of the drone. But additionally, you know, the Supreme Court held in knots that there is no reasonable expectation of privacy with respect to your public movements. And so both of those doctrines intertwine here such that you do not have a reasonable expectation of privacy when you avail yourself of public activity. And so that is why there's no there's no search here. I think to return to Cairo is that my understanding is that the simple monitoring absent subsequent enforcement action would not present a search at all. And because there's no actual law enforcement action taken, then there's no ability to raise a Fourth Amendment claim so far as I understand. And is that because you think they wouldn't have standing? I mean, the violation of privacy is a violation of privacy, even if no sanction attaches to it. And if everybody who works at the FAA knows all kinds of things about. I mean, you could station somebody on my front porch, the letter carrier could stand on my front porch and look in my my front door window all day long. And the fact that I'm not being prosecuted for whatever activities going on inside doesn't mean I don't have a privacy claim. I don't know, I just I mean, I think that you're you're confusing maybe the opportunity to raise an objection with the existence of the search in the first place. And I'm just not sure why it would be limited to an enforcement action if if the FAA is, in fact, getting. Information through the remote ID program, you have to answer the question whether there's an expectation of privacy in that information enforcement or no. I suppose we're confusing two separate questions here, Your Honor, which is that whether the rule itself violates the Fourth Amendment versus Fourth Amendment standing doctrine, which is I don't I apologize if I confuse those. Right. In terms of the the petitioner's claim that the rule itself violates because it gives access to law enforcement there, I think the rule itself does not yet. And then in response to Judge Wilkins questions, you acknowledge. But the FAA in its sort of enforcement role, it does have access to the information and compare the remote ID information with more personally identified information. And that's something that this rule author. That's correct. And so to the extent that that's what is out there. In in privacy terms, the question there, I guess, is does that infringe any reasonable expectation of privacy? The fact that all of FAA or some people in FAA with some privacy protections do have access to that. And your response to that is it's still not a search because the availability of that data does not infringe a reasonable expectation of privacy for the number of reasons that I've said. The location of an airplane, your public movements, the the fact that the Supreme Court said in Kansas v. Glover that running a license plate itself. So basically what FAA would be doing with the drone data is not a search. And if you disagree on all of those scores, we do have the position that or suggest the court deny the petition on the basis that there are special needs apply here such that right now. There's no way for FAA or its security partners to identify drones in the air. And this particular mechanism is. Let me ask one question, but it's with apologies. It's a bit of a long wind. It's going to end with this question. What do you want me to do right now? Assume I think that this rule does not violate the Fourth Amendment in ninety nine point nine percent of its applications, because although Carpenter and Jones carved out some, I think, still narrow exceptions to this general rule. There is, I think, a general rule that what someone does in public is not private. And most of the time, I suspect when people fly drones, it's in. Now, even for the sake of this, say that above your own tree line will count as in public, but there are going to be times where someone might not even leave the walls of their house. And they're flying a drone on their own property below the tree. And that drone and that person cannot be seen by anyone unless someone were to trespass on their property. In that instance, I think your rule is unconstitutional. What do you want me to write in an opinion if I get to write this? Sure. For one, I will contest that. I don't want to fight the hypothetical. I know. But I will say just for just for purposes of clarity with respect to the rule scope, in all circumstances, it contemplates that operators will be within the line of sight of a drone. And so it's hard to imagine that you would be within the walls of your house and operating the drone outside. So even if you're at, say, you're at the window. And we'll take them outside. I still think. Yes, yes, yes. Absolutely. I just wanted to clarify for purposes of the court's understanding. My understanding is that the. The rulemaking would have to be done again because the technical specifications associated with identifying very specific places in which the rule would not apply are things that would require substantial reworking of the rule itself. That's my or is it not that this is in effect of a challenge to the rules legitimacy? And you're saying that's an application that might be in that. Sorry, I'm trying to be candid with the court, Your Honor. Just to say that I'm grateful there is in the in the mind, in the very small circumstances which you've identified, Judge Walker, that the FAA, the FAA's application of the rule does not contemplate that sort of surgical tailoring such that they would have to reevaluate how to implement the rule itself. That is my understanding based on my discussions with agency counsel. Is the data location data? Is it stored? No, Your Honor. And that's where I was. I have another response to Judge Walker's question with respect to Carpenter and Jones. Is that the data here is different in kind and different in degree because the drone, the remote ID rule only requires drones broadcast their information while they're operated. There's a very limited universe of information implicated here. So it's different in degree because people use their drones much less frequently than, say, there's a slightly different question. If you use it, you know, if I used it two weeks ago, does FAA have the ability to go back through its database and say, oh, on that Wednesday afternoon, two weeks ago, Judge Pillard was operating her drone in Fort Reno? No, Your Honor. And that's why it's different in kind because FAA does not store the data. And indeed, so far as I understand, have no have not contemplated the ability to store that data. Other questions? Judge Wilkins? Yes. I'm trying to understand your response to the, I guess, arbitrary and capricious or rulemaking challenge regarding statutory authority. So the rule cites two different statutes as, I guess, providing the authority for, and you referred to this when you opened. Yes, I believe it's. 401-03-B1 and B2. In those, that statute talks about navigable airspace, right? Yes. And is there a definition of navigable airspace that you can point us to? Yes, Your Honor. It's 49 U.S.C. 401-02-A, subsection 32. Okay. That's what I thought you would point us to. And it says airspace above the minimum altitudes of flight prescribed by regulations under this subpart and subpart three of this part, including airspace needed to ensure safety in the takeoff and landing of aircraft. So where are the regulations that define minimum altitudes for drones? I believe it's cited in Petitioner's reply brief. I'm sorry, I don't have that immediately available. I believe it's 49 CFR 119, but I'm not positive. But that does not, the court need not address that issue here. I will return to your, I think the question on the- I want you to answer my question, though. I take your point that you think that we don't need to answer it, but assume that I think that I do need to answer it. So how do I know what navigable airspace is? Is there a regulation that says that navigable airspace goes all the way down to the ground in someone's backyard? It certainly could foreseeably include that, Your Honor. That's, for example, how FAA regulates language about a flight attendant saying that you need to wear your seatbelts and put up your tray tables while you're on the ground in a plane. And similarly here, drones could foreseeably interfere with aircraft operations on the ground. I thought there was a reg defining navigable airspace as 500 feet up. Am I misremembering? No, you're not misremembering, Your Honor. I just didn't have it available. But then, I don't want to speak for Judge Wilkins, but his question made me think, if the reg says navigable airspace is 500 feet up, and if Congress has authorized the FAA to regulate the navigable airspace, where's the FAA getting the authority to regulate 500 feet down? In two places, Your Honor. First, it's authority to regulate air commerce, which is 40102A3, which is a separate substantive question than the navigable airspace. But also because the statutory language for navigable airspace includes, quote, airspace necessary to ensure security and takeoff and landing of aircraft. Isn't there also a concern of much lower altitudes with drones that if a drone, for example, would run out of power and it would just drop? If it's 50 feet up and it drops onto a pedestrian's head or an expensive vehicle, it could cause a lot of harm. Absolutely, Your Honor. So the 500 feet, I don't understand this rule to be constrained by that. That's correct. Other questions? Not for me. All right. Thank you, Mr. Ross. The multiple cases that were pointed out by my opposing counsel specifically regarding the aircraft flying around in the United States and transponder cases there, a lot of them all had the underlying factors going on. It's the Knotts case. And what's interesting to note there is that these are kind of like short, not short, but there's a one time flight here to there. It's not a persistent surveillance. And what's interesting to note is that if Knotts is the great granddaddy of those cases that are in other circuits that are non-binding to this court, the D.C. Circuit said in the U.S. v. Manard case, specifically it titled one of these subsections saying Knotts is not controlling. The great granddaddy case for all of the cases cited by my opposing counsel was specifically distinguished in that case. And so I think that's one really important point. Two, regarding there's a Fourth Amendment analysis we've been going into here and the court has been asking a lot of probing questions on. But I noticed that I was just counting the minutes there that my opposing counsel spoke. There was about 27 minutes there of Fourth Amendment questions. And I find it really interesting that, and I think a really good quote here is from the State Farm case where the United States Supreme Court said courts may not accept appellants, counsel's post hoc rationalizations for agency actions. There was a whole lot said in those 27 minutes trying to rescue this dune ship, this Fourth Amendment case, but the record is they had an opportunity and they didn't bite at that apple. And so the only proper remedy here is really we need to hear what they have to actually say. And in this court, this is not the proper form. The only proper remedy. I understand your argument counsel are you saying that, that the rule itself, when it addressed the, the Fourth Amendment questions did not make the argument that even if this is a search, it would qualify under the special needs exception. The special needs exception was never discussed I see my time's up here, but I would love to get more into the special needs exception was never discussed in the final rule. Okay, so that's what I'm trying to understand you're saying that, that if, if, if it can only be justified by the special needs exception that justification was not articulated during the rulemaking. Correct. And even, and even more so, the, there were numerous commenters that pointed out cots Jones and Riley so specifically at ja 1049 a cyclone FPV cited and apply the carpenter and Jones cases, specifically to the NPRM, an attorney named Thomas Sugahara at ja I believe 1063 went through and discussed carpenter cats Jones which carpenters discusses the rest of those cases cats Jones and Riley, and in response to those incredibly on point comments regarding the Fourth Amendment, the FAA did not provide any response in the final rule. All right, thank you. I don't have any further questions. All right, thank you, counsel, the case is submitted.
judges: Pillard, Wilkins, Walker